# Stringer *v.* Alabama Mineral Railroad Company. *et al.*

*Action for Damages against a Railroad Company for Personal Injuries.*

1. *Gross carelessness, wantonness or recklesness.*—In an action against a railroad company for damages, on account of personal injuries, where it is shown that the accident was within the corporate limits of a town or city, but n·t at a public crossing, or under such conditions as that defendant was chargeable with notice, in the absence of proof of actual notice, that there were persons on the track at the place where the accident occurred, or a knowledge that injury would result as the probable consequences of any mere neglect of duty, no recovery can be had under a count, which alleges that the injuries were caused by the "gross car. lessness, wantonness or recklessness" of the defendant.

[Stringer v. Alabama Mineral R. R. Co. et al.]

2. *Evidence as to simple negligence.*—Where the evidence is in conflict as to whether the defendant is guilty of simple negligence, it is a question for the jury to determine whether the defendant is guilty of negligence, and then whether the plaintiff is guilty of negligence which proximately contributed to his injury.

3. *Crossing railroad track.*—A person has the right to cross over a railroad track wherever he may have occasion to do so, but before attempting to cross, he must look and listen ; and if, after having thus assured himself that the way is clear, while attempting to exercise this right by crossing over the railroad track in a city or town, he is injured by the negligence of the employes of the railroad company, in failing to give the signals of warning required by statute, he is entitled to recover for personal injuries thus sustained.

4. *The plaintiff a trespasser.*—If, in an action against a railroad company for damages for personal injuries, it is shown that at the time of the accident the plaintiff was standing on the track, or walking along the track, he was then a trespasser, and is not entitled to recover, although the defendant may have been guilty of negligence in failing to give warning of approach, or to comply with the rate of speed fixed by law.

5. *"Gross," "reckless," as applied to negligence.*—The words "gross" and "reckless," when applied to negligence, *per se* have no legal signification that imposes other than simple negligence and a want of due care.

6. *Negligence; two grades* —There are, in our jurisprudence, but two recognized grades of negligence: (1.) Simple negligence, or want of that care which a reasonably prudent man would exercise under like circumstances. (2 ) Wilful or wanton negligence. which means such a reckless or wanton disregard of probable consequences, known to the person guilty of the wrong. or under such circumstances as will impute a knowledge to the wrong-doer, or such a negligent omission of preventive effort, after knowledge of danger, as to be the equivalent of wilful and intentional injury.

7. *Charges; abstract.*—A charge announcing a correct principle of law, if not applicable to the facts of the particular case, is properly refused.

APPEAL from the Circuit Court of Talladega.

Tried before the Hon. LEROY F. BOX.

The appellant, E. G. Stringer, brought the present action against the Alabama Mineral Railroad Company and the Louisville & Nashville Railroad Company, and sought to recover for personal injuries sustained by him, in being thrown from the track by an engine, which was running upon the Alabama Mineral Railroad track. The Alabama Mineral Railroad Company was a branch of the Louisville & Nashville Railroad Company's sytem. The accident occurred in the city of Talladega, on Coffee Street. The city had authorized the construction by the railroad company of its track upon said street, and there was also the track of the Birmingham & Atlantic Railroad Company on said street. The plaintiff's testimony tended to show that he was engaged in the warehouse business in the city of Talla-

[Stringer v. Alabama Mineral R. R. Co. et al.]

dega, and there was erected on said Coffee Street, within a few feet of the Alabama Mineral Railroad track, a platform used by him in connection with his business. For the purpose of preventing any injury to said platform by the workmen, who were engaged in laying sewer pipe under said platform, the plaintiff had been under said platform near the railroad track, where the pipe was being laid. As he came out from under the platform, a steam drill, used in connection with the sewerage work, commenced operations, and threw a cloud of steam across the Alabama Mineral track; that before starting across said track for the purpose of returning to his place of business, he looked to the West and saw no train approaching; in this direction he being able to see only about 40 yards on account of the steam from the drill; that he then looked towards the East, and saw no train; that upon his then taking a few steps up an embankment to go across the track, he was struck by an engine of defendant's coming from the West. The train to which this engine belonged was a freight train, due to arrive in Talladega at 8 o'clock A. M. The passenger train coming from the East was due at 9 o'clock A. M., and the accident occurred at 8:55 A. M.

The testimony for the plaintiff also tended to show that at the time of the accident the engine was running at a rate of speed of from 10 to 20 miles per hour, and that the bell was not being rung, or any signal of its approach given, and that if any such signal had been given he could have heard it, notwithstanding the noise of the steam drill prevented his hearing its approach without such signals. The testimony for the defendant, as to the speed of the engine, was in conflict with that for plaintiff, and tended to show that its speed was from 5 to 8 miles per hour, and that its bell was being rung as it passed along Coffee Street. The place where the accident occurred was not a crossing, but was on a street, which the testimony for the plaintiff tended to show, was very much travelled by persons on foot, and often used by vehicles, and that there was much crossing and re-crossing Coffee Street at this point.

The assignments of error only go to the ruling of the court upon the charges given and refused. Upon the introduction of all the evidence the court in its oral charge, among other things, instructed the jury as follows: "The agents who were running the train, the engineer and fireman, were not bound to keep a lookout for trespassers or persons upon the track at that place." The plaintiff excepted to the giving of this part of the oral charge, and also

separately excepted to the court's giving each of the following written charges which were requested by the defendants : (1.) "The court charges the jury that there is no evidence in this case, showing that the injuries to the plaintiff were caused by the gross negligence of the defendant or its agents." (2.) "The court charges the jury that there is no evidence in this case to show that the injuries to plaintiff were caused by the defendant, or its agents, wantonly, recklessly, or intentionally." (3.) "The court charges the jury that, although they may find from the evidence that Coffee Street was a public street in the city of Talladega, and was frequently used by travellers on foot, and occasionally used by travellers in vehicles, and that this fact was known to the defendant's engineer and fireman, in charge of the engine at the time plaintiff's injuries were received, still the defendant would not be guilty of gross negligence even though its engineer was running at an undue rate of speed, or faster than required by the ordinance of the city of Talladega, and without giving the statutory signals." (4.) "The mere fact that the defendant's train was being run through Coffee Street in the city of Talladega, over which defendant's track was laid by permission from the city, at a faster rate of speed than required by the ordinances of the city of Talladega, and without giving statutory signals, is not sufficient to show gross negligence on the part of defendants. The undisputed evidence in the case sufficiently shows that at the time the injuries were received, the engineer and fireman in charge of the defendant's train did not and could not see plaintiff on the track, the view of him being obscured by the steam from the steam drill which was operating near the track." (6.) "The court charges the jury, that although the defendant's railroad is constructed through Coffee Street, which is a public street in the city of Talladega, by permission from the city, that plaintiff was trespassing, and unlawfully on said track, if, at the time he was injured, he was standing on the track or walking up the track with his back towards the engine. The undisputed evidence in this case shows that there was sufficient room for plaintiff to walk in the street without walking up defendant's track ; that the railroad track is a known place of danger, and it was inexcusable in plaintiff, if he unnecessarily walked up defandant's track returning to his place of business, or if he was standing upon the track looking at the operation of the steam drill, or for whatever purpose. If the evidence in this case shows to your satisfaction that the plaintiff at the time he was injured was walking up the defendant's track with

[Stringer v. Alabama Mineral R. R. Co. et al.]

his back or side to the approaching engine he was guilty of contributory negligence, and can not recover." (7.) "The court charges the jury that notwithstanding they may believe from the evidence that Coffee Street was a frequently travelled street in the city of Talladega, used frequently by foot passengers, but not by travellers in vehicles, and notwithstanding these facts may have been known to the defendants and their employes, this is not sufficient to charge the defendant with actual notice that there were persons or any person on the track at the time the accident happened. The circumstances of this case are not sufficient to charge defendant with notice, or with what is equivalent to notice, that there were any persons on the track. The fact that the street is frequently used by passengers on foot, which is known to defendant's employees, and that they occasionally cross and recross the track is not equivalent to actual notice, under the circumstances of this case, to defendants or their agents, that there were persons or any person on the track, at the time the accident happened." (8.) "The court charges the jury that if you believe from the evidence that the engine on the defendant's track was being operated at a speed not exceeding eight miles per hour and that the bell was being rung from the time the engine left West street until it passed the platform where the accident happened, your verdict must be for the defendant." (9.) "The court charges the jury that they will consider all the testimony, and will endeavor to arrive at the truth of the matter, as revealed to them from the mouth of the witnesses, or by the physical facts in the case, and by all the circumstances shown by the testimony in the case, and in construing the evidence they must adopt the evidence which seems to them most reasonable, and they must reconcile all the evidence if they can. And if they find it impracticable to do this, positive evidence is regarded in law as of more weight than negative, and ordinarily where the witness testifies that he saw the train or heard the sounds, his testimony is entitled to more weight than the person who stated that he did not see or that he did not hear. If from the testimony the jury are reasonably convinced that the engine was running at a speed not exceeding eight miles per hour and that the bell was being rung from West street, where the engine started, to the platform, where the accident happened, then the verdict must be in favor of the defendant." (10.) "The court charges the jury that even if the jury should find that the defendant or its agents failed to run the engine as prescribed by the ordinance of the city of Talladega, within

eight miles per hour, and failed to give the statutory signals by ringing the bell and blowing the whistle, while passing through Coffee street, this would be but 'simple negligence' on the part of the defendant, and notwithstanding this, if the plaintiff himself was negligent in entering on the defendant's track, without stopping and looking and listening for the approach of a train, and his negligence contributed proximately to the injuries he received, he can not recover." (11.) "The court charges the jury that while the law requires of the defendant or its agents reasonable diligence in the operation of its train, it also requires of the plaintiff reasonable diligence for his own protection, and if he entered upon defendant's track at a time when his vision was obscured by the steam from a steam drill, when by walking but a few steps down the track he could have had an unobscured view of the track for two hundred or more yards, which would have insured his safety, then he can not recover." (12.) "The court charges the jury that it is not unreasonable that the plaintiff be required to exercise reasonable diligence for his own protection; every one is bound to know that the track of the railroad company is a known place of danger, and foot passengers, as well as passengers in vehicles, are charged with notice of this fact, and when crossing or attempting to cross a railroad track are required to stop and look and listen for a train before entering upon the track; and if they fail to do so, and receive injuries they can not recover. And if the view of the track is obstructed, or if the noise of the approach of the train is deadened by other noises it is all the more incumbent upon the plaintiff to be careful and see that the crossing is free from danger. If his view is obstructed, and if, as in this case, by taking a few steps the plaintiff can avoid the obstruction or get a clearer view of the track, for such a distance as will insure his safety, he is guilty of such negligence in failing to do so as will preclude his recovery." (13.) "The court charges the jury that the plaintiff had no right to walk up defendant's track, or to stand on the track, and if the evidence in this case shows that at the time the injuries were received the plaintiff was walking up defendant's track returning to his place of business or was standing upon the track noticing or watching the operation of the steam drill, then he can not recover."

The plaintiff requested the court to give the following written charges, and separately excepted to the refusal of the court to give each of them as asked: (1.) "If the jury believe from the evidence that Stringer was injured by the defendant's engine being run against him, and throwing him

against the timbers of the platform and in the ditch as he was crossing the track, and that just before he went on the track, and when in three or four feet of it, he stopped and looked down, and then turned and looked up, the track, and that there was no engine in sight, and that the drill was making so much noise, that an approaching engine could not be heard, and if they believe from the evidence that he had time to cross and would have crossed the track safely if the engine had been running only 8 miles an hour when it struck him, then the jury must give their verdict for Stringer." (2.) "To run a train at a high rate of speed, and without signals of approach, at a point where trainmen have reason to believe there are persons in exposed positions on the track, and where the public are accustomed to pass on the track with such frequency and in such numbers (facts known to those in charge of the train) as they will be held to a knowledge of the probable consequences of running at such rate without warnings, will impute to them reckless indifference, and will render their employer liable for injuries resulting from so running said train, and notwithstanding there was negligence on the part of the person injured and no fault on the part of the servants after they saw or ought to have seen him." (3.) "If the jury believe from the evidence that Stringer was injured by being run against by defendant's engine on Coffee street, in the city of Talladega, while passing across or along said street, at a point where the train-men had reason to believe there were persons in exposed positions on the track, and where the public are wont constantly to pass on the track in large numbers, and where there was a public warehouse in use fronting on said street, from and into which freight was loaded and unloaded across the track on which the engine was being run, that such point on Coffee street was in a populous district in the city of Talladega, and at such point there was at that time a large force of hands engaged in putting down a sewer in said street, and that there was a dense cloud of steam across said street which could not be seen through, and that these facts were known to those in charge of said engine, and that such facts were sufficient to give those in charge of the engine reason to believe there were persons in exposed positions on the track, and that when the engine struck Stringer it was running at from 10 to 20 miles an hour, and that the bell was not being rung nor the whistle blown, and that Stringer's injuries were caused by the running of said engine at such rate of speed without warning, then such persons in charge of the engine are held in law to a knowledge of the

probable consequences of so running without warning so as
to impute to them reckless indifference, which renders the
defendants liable for Stringer's injuries, and they are liable
notwithstanding there was negligence on the part of Stringer
in so being on the track and no fault on the part of the en-
gineer and fireman after they saw, or ought to have seen him,
and the jury should render a verdict for Stringer."   (4.)
"When a railroad runs on or along a public street of a large
city, which street is in constant use by the citizens and
where there is a cotton warehouse which fronts on
said street, and into and from which all kinds of freight
is constantly being loaded, and on and from cars left
standing on another track on the other side from the ware-
house of such railroad, and where many people are in the
habit of rightfully being in exposed conditions on such
track at such place, and where these facts are known to
those in charge of an engine running on such track at such
place, it is wantonness, recklessness and gross negligence to
run such engine at the rate of 15 to 20 miles an hour with-
out ringing the bell or blowing the whistle, and if one of
such persons on the track is injured by such running of the
engine, he is entitled to recover damages, notwithstanding
he may have been guilty of simple negligence by being on
such track."   (5.)   "If the jury believe from the evidence
that Stringer was hurt by being run against and thrown
under the platform by defendant's engine while he was
walking on the track on Coffee street, and that immediately
behind Stringer there was a cloud of steam about 15 or 20
feet high and the same width, which could not be seen
through, and that the engine ran through the steam at about
12 to 20 miles an hour, and that the bell was not being rung
nor the whistle blown, and that the platform was used in
connection with Stringer & Jackson's warehouse, and that
they were constantly engaged in loading and unloading
freight from the B. & A. railroad on skids across the de-
fendant's track to and across the platform, and that that
part of Coffee street was a public street in constant use and
that a great many people travelled it; then it was gross
negligence to so run the engine, and the jury should find
their verdict for Stringer, if they so believe that such gross
negligence was the proximate cause of his injuries."   (7.)   "To
run a train at a high rate of speed and without signals of
approach at a point where the trainmen have reason to be-
lieve there are persons in exposed positions on the track,
and where the public are accustomed to pass on the track
with such frequency and in such numbers, and where there

is an unguarded crossing in a populous district of a city (facts known to those in charge of the train), as that they will be held to a knowledge of the probable consequences of running at such rate without warnings, will impute to them reckless indifference and will render their employer liable for injuries resulting from so running such train, and notwithstanding there was negligence on the part of the person injured and no fault on the part of the servants after they saw or ought to have seen him." (8.) "If the jury believe from the evidence that Stringer was injured by being run against by the defendant's engine on Coffee street, in the city of Talladega, while passing across or along said street at a point where the trainmen had reason to believe there were persons in exposed positions on the track, and where there was a public warehouse in use fronting on said street, from and into which freight was loaded and unloaded across the track on which the engine was being run, and that such point on Coffee street was in a populous district of the city of Talladega, and that at such point there was at that time a force of hands engaged in putting down a sewer in said street, and that there was a dense cloud of steam across said street which could not be seen through, and that these facts were known to those in charge of said engine, and that such facts were sufficient to give those in charge of the engine reason to believe there were persons in exposed positions on the track, and that when the engine struck Stringer it was running at from 10 to 20 miles an hour, and that the bell was not being rung nor the whistle being blown, and that Stringer's injuries were caused by the running of said engine at such rate of speed without warnings, then such persons in charge of the engine are held in law to a knowledge of the probable consequences of so running without warnings, so as to impute to them reckless indifference which renders the defendant liable for Stringer's injuries, and they are so liable notwithstanding there was negligence on the part of Stringer in so being on the track and no fault on the part of the engineer and fireman after they saw or ought to have discovered any thing which indicated probable danger to human life, and the jury should render a verdict for Stringer." (9.) "When a suit is brought against any corporation it can not be permitted to deny the right of the person suing to bring and maintain his suit against the corporation by the name in which it keeps its books, and accounts, gives receipts and takes receipts and transacts all of its other business and by which it is generally known." (10.) "If the evidence shows to the satisfaction of the jury

that Stringer was injured by defendant's engine running against him upon Coffee street, in the city of Talladega, under such circumstances as does not make him guilty of contributory negligence, then if the jury believe from the evidence that if the bell had been ringing or the whistle blown Stringer would have heard it and gotten out of the way, the burden is on the defendant to prove that the bell was being rung or the whistle blown, and if the testimony on this point leaves it in doubt and uncertainty in the minds of the jury as to whether or not the bell was being rung or whistle blown, then the jury should find for Stringer."

There were verdict and judgment for defendant, and plaintiff appeals, and assigns as error the rulings of the court in giving and refusing the several charges asked.

CECIL BROWNE, for appellant.—1. The evidence in this case did not warrant the giving by the court of those charges which affirmed that there was no evidence of either gross negligence or wantonness on the part of defendant's employees. This, under the circumstances of this case, was a question for the jury.—*Ga. Pac. R. Co. v. Lee*, 92 Ala. 262; *M. & E. R. Co. v. Stewart*, 91 Ala. 421; *Ga. Pac. R. Co. v. O'Shields*, 90 Ala. 29; *L. & N. R. R. Co. v. Webb*, 90 Ala. 192; *L. & N. R. R. Co. v. Watson*, 90 Ala. 68; *Bentley v. Ga. Pac. R. Co.*, 86 Ala. 485; *Frazer, Adm'r. v. S & N. Ala. R. R. Co.*, 81 Ala. 199; Beach on Con. Neg., § 65. 2 Defendant's charge No. 1, which asserted that there was no evidence of any "gross negligence" on the part of the employees of defendants, was clearly illegal. Such term does not necessarily imply that degree of wantonness, recklessness, and indifference which would avoid the defense of contributory negligence.—*Carrington v. L. & N. R. R. Co.*, 88 Ala. 477; *M. & C. R. R. Co. v. Womack*, 84 Ala. 149; *Lienkauf v. Morris*, 66 Ala. 406; *Bentley's Case, supra.* 3. Charge No. 12 of defendants' charges should not have been given. This charge using the words "as in this case," was in effect the general or affirmative charge. Plaintiff, after using due care, had the right to rely upon a compliance, by those in charge of the train, with the law.—*Lyman v. Boston & Maine R. Co.*, 45 Am. & Eng. R. Cases, 167; *Piper v. C., M. & St. P. R. Co.*, Sup. Ct. Wis. June 21, 1890; *Newson v. N. Y. C. R. Co.*, 29 N. Y. 383; *Thomas v. Delaware, L. & W. R. R. Co.*, 8 Fed Rep. 732; *Penn. R. R. Co. v. Ogier*, 35 Penn. St. 72; *Copley v. N. H. & N. Co.*, 136 Mass. 6; Beach on Con. Neg., § 64. 4. Charge number 1, asked by plaintiff should have been given. It only asserted the gen-

eral and conceded proposition of law that if a person is injured while lawfully crossing a railroad track, after having stopped, and looked, when listening could be of no avail, then if the injury is proximately caused by the running of the train at an unlawful rate of speed, such person should recover. It is negligence *per se* to run a train contrary to reasonable statutory regulations.—*L. & N. R. R. Co. v. Webb*, 90 Ala. 185; *H. A. & B. R. R. Co. v. Sampson*, 91 Ala. 565. 5. The court erred in not giving charges numbered 2, 3, 4, 5, 7, 8, asked by plaintiff.—*Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 262. 6. Charge numbered 10, asked by plaintiff, was free from error. Code of Alabama, §§ 1144 and 1147. See also note to page 300, Code; *Leak v. Ga. Pac. R. R. Co.*, 90 Ala. 163.

KNOX & BOWIE, *contra*.

COLEMAN, J.—The action is in case to recover damages for personal injuries. There are two counts in the complaint, the first averring simple negligence as the cause of the injury, and the second, that it was caused "by the gross carelessness, wantonness or recklessness," of the defendant. The first plea of the defendant presented the general issue of "not guilty." The second plea, that of contributory negligence on the part of plaintiff. No question is reserved as to the sufficiency or irregularity of any of the pleadings.

No recovery could be had upon the second count, except upon proof that defendant was guilty of having wantonly inflicted the injury, or of such reckless negligence, as to be the equivalent of having wantonly or intentionally inflicted the wrong.

The place where the injury occurred was within the corporate limits of the city of Talladega, but not at a public crossing, or other place of such character, or under such conditions, as that defendants were chargeable with notice, in the absence of proof of actual knowledge, that there were persons on the track at the time and place where the injury occurred, or a knowledge that injury would result as the probable consequences of any mere neglect of duty.—*L. & N. R. R. Co. v. Webb*, 97 Ala. 308; *Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 262; *Anniston Pipe Works v. Dickey*, 93 Ala. 420-1; *Chewning v. Ensley R. R. Co.*, 93 Ala. 29. The defendants were entitled to the general affirmative charge upon the second count.—*L. & N. R. R. Co. v. Johnson*, 79 Ala. 436; *B. M. R. R. Co. v. Jacobs*, 92 Ala. 192; *H. A. & B. R. R. Co. v. Winn*, 93 Ala. 308.

There was no error in refusing the charges requested by plaintiffs, which were predicated on the assumption that there was evidence sufficient to authorize a finding by the jury that defendants were guilty of wanton injury, or that reckless negligence which is its equivalent, and which would entitle the plaintiff to recover, notwithstanding he may have been guilty of contributory negligence.

There was no error in refusing charge No. 2, which seems to have been copied from the opinion in the *Lee Case*, 92 Ala. 262, *supra*. As an abstract proposition of law the charge was correct, but the facts of the case did not admit of the application of the principles of law invoked, and to have given the charge probably would have misled the jury.

The evidence is in conflict as to whether the defendant was guilty of simple negligence. That offered by the defendant tended to show due observance of the statute, requiring signals to be given when passing through cities and towns, and city ordinances, regulating signals and speed of trains, and the evidence of the plaintiff tended to show that both the statute law and city ordinances were disregarded. The weight of testimony and credibility of witnesses, present questions to be determined solely by the jury. If the jury should believe the testimony of the defendant on the question of defendant's negligence, there is an end of the case, and plaintiff could not recover. On the other hand, if the jury come to the conclusion, that defendant was guilty of negligence, which proximately caused the injury, then the question arises as to whether plaintiff was guilty of proximate contributory negligence. On this question the evidence is in conflict. The evidence of the defendant tends to show, that at the time plaintiff was injured, he was standing on the track, or walking along the track. On the other hand plaintiff himself testified, that he was attempting to cross the track, and before stepping upon the track he both looked and listened. That towards the East, he could see up the track for some two hundred yards, and towards the West, he could see over forty yards, to a place on the track where a jet of steam from a drilling machine, was thrown upon and across the line of track, which shut off any further vision of the track. Plaintiff further testified that he could have heard the ringing of the bell, or blowing of the whistle, if defendant had complied with the statute, requiring signals to be given, and he further testified, that he could and would have crossed in safety, if the train had obeyed the ordinance of the city, limiting its speed, while running with-

in its corporate limits. Here again the jury must determine what facts are true.

At the place where the plaintiff was injured, he had no right to stand upon defendant's track, or walk along the track. His only right was the right of crossing. If he was standing on the track or walking along it, he was a tresspasser. If he was merely crossing the track, a right he undoubtedly had in the transaction of business, and had exercised due caution, had looked and listened and thus assured himself he could with safety venture across, and while in the exercise of the right to cross, was injured by the negligence of the defendant, the plaintiff would be entitled to recover. This is the rule as declared in the case of *Glass v. Mem. & Char. R. R. Co.*, 94 Ala. 587, and we think it a sound rule, and adhere to it.

It is contended that plaintiff ought to have gone on the west side of the steam jet so that he could have seen along the track in that direction a sufficient distance to have made sure that he could cross with safety. The soundness of this contention, depends upon the credibility of other evidence in the case. If, as testified to for plaintiff, the passenger train from the East was momentarily expected, and, according to schedule of time, none was expected from the West, and he had no information that the freight train from the West was delayed, and plaintiff took the precaution to attempt a crossing far enough on the east side of the jet, at a point where he could see the passenger if it was approaching, and far enough away from the jet of steam to safely cross, if the train-men complied with the statute and city ordinances, as to speed and warnings, and he both looked and listened for approaching trains, and neither stood upon the track, nor walked along the track, but across the track only, then it could not be said he was guilty of contributory negligence, which proximately contributed to his injury; and if defendant was guilty of negligence in running at an unauthorized rate of speed or failed to give the proper signals or warning, and its neglect in these respects caused the injury, then plaintiff would be entitled to recover. The rules of law and city ordinances, regulating warnings and speed in cities and towns, were intended to prevent the infliction of injuries in such and similar cases.

On the other hand, if plaintiff was standing on the track, or walking along the track, and, while thus unlawfully using defendant's right of way, was injured, he could not recover, although defendant may have been guilty of negligence in

the failure to give warnings of its approach, or to comply with the rate of speed fixed by the ordinance of the city.

The evidence shows without conflict, that defendants were not derelict in duty after a knowledge of plaintiff's peril. The words "gross," "reckless," when applied to "negligence," *per se* have no legal significance which import other than simple negligence or a want of due care.—*K. C. M. & B. Railroad Co. v. Croker*, 95 Ala. 412; 11 So. Rep. 262; *L. & N. R. R. Co. v. Barker*, 96 Ala. 435; 11 So. Rep. 453.

Our decisions recognize but two grades of negligence, if indeed one strictly and technically speaking can be regarded as negligence. There is simple negligence, or want of due care, which, when it is the proximate cause of injury, will support an action and authorize a recovery, the party injured, not being guilty of contributory negligence. Then there may be such reckless or wanton disregard of probable consequence, known to the person guilty of the wrong, or under circumstances that knowledge of the probable consequences of his wrong doing will be imputed to the wrong doer, as to be the equivalent of a willful and intentional injury, or there may be a negligent omission of preventive effort, after knowledge of danger. Proof of the latter character of negligence, will authorize a recovery although the party injured may have been guilty of contributory negligence, unless the contributory negligence on his part is of the same character as that of which the defendant was guilty, in which event, he would not be entitled to a verdict. The law as declared in the head notes of *Ensley R. R. Co. v. Chewning*, 93 Ala. 24, is correct, but the definition of the term "gross negligence," therein given is not found in the text of the opinion, and is not to be received as a universally correct legal definition of the phrase. 16 Am. & Eng. Encyc. of Law, pp. 426-7, § 16.

In some of the charges given at the request of the defendant, the word "gross," was used in the sense of "willful" or "wanton," and in this respect the court erred. Charge No. 9, given for defendant, in which a rule as to positive and negative testimony is laid down was perhaps misleading, in not predicating equal means of knowledge, and the credibility of the witnesses, but there is no error in giving the charge, which would require a reversal for this cause. *Ensley R. R. Co. v. Chewning*, 93 Ala. 31.

We believe we have considered every question raised by the record, or which can possibly arise on another trial.

Reversed and remanded.